UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
EDWIN RIVERA and SHAWN RIVERA,

                             Plaintiffs,            **VERIFIED**
                                                **COMPLAINT**

          -against-
                                               Index No.:

THE CITY OF NEW YORK, NYPD POLICE OFFICER
CHRISTOPHER CAMPOS (Badge No. 5878), and NYPD       **PLAINTIFF DEMANDS**
MEMBER DOES # 1 – 12;                                   **A TRIAL BY JURY**

                               Defendants.

--------------------------------------------------------------------X


Plaintiffs, EDWIN RIVERA and SHAWN RIVERA, by their attorneys, KAISHIAN &

MORTAZAVI LLC, by MARYANNE K. KAISHIAN, ESQ., an attorney duly admitted to practice

before the Court of the Eastern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.        On August 30, 2023, brothers Edwin Rivera and Shawn Rivera, the Plaintiffs, were

beginning their commute to work from their shared home in Queens County when DEFENDANT

CHRISTOPHER CAMPOS ("Defendant Campos"), an off-duty New York City Police Department

(NYPD) officer, initiated a violent road rage encounter with Plaintiffs.

2.        Defendant Campos, behaving in a violent and erratic manner, pursued Plaintiffs and

fired his service weapon, shooting and seriously injuring Plaintiff Edwin Rivera, and causing

injuries to Plaintiff Shawn Rivera.

3.        Defendant Campos was operating a vehicle and shot Plaintiff Edwin Rivera with

Defendant's NYPD service weapon, but Defendant appeared to carry no identification on his

person. Defendant actively threatened, pursued, and fired upon unarmed Plaintiffs, and issued

orders while failing to properly identify himself to Plaintiffs as a police officer despite their repeated requests. Plaintiffs urged bystanders to call 911.

4.      NYPD members who responded to the scene were likewise unable to immediately confirm Defendant Campos' claims that he was employed by the NYPD.

5.      Nevertheless, upon eventual confirmation of Campos' employment as a police officer, Plaintiffs were arrested.

6.      Plaintiffs sustained serious injuries as a result of Defendants' conduct, the effects of which are ongoing. The full extent of these injuries is not yet known.

7.      Plaintiff now bring the instant Complaint before this Court.

## PARTIES

8.      At all times mentioned herein, **Plaintiff EDWIN RIVERA** was an adult resident of Queens County, City and State of New York.

9.      At all times mentioned herein, **Plaintiff SHAWN RIVERA** was an adult resident of Kings County, City and State of New York.

10.      **DEFENDANT CITY OF NEW YORK ("Defendant City")**, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and their employees. Under New York State law, Defendant City is liable for the actions of its NYPD agents and/or employees under the doctrine of *respondeat superior*.

11.      **DEFENDANT CHRISTOPHER CAMPOS ("Defendant Campos")**, at all relevant times, was a police officer employed by Defendant City through its police department, the NYPD.

12.    **DEFENDANT NYPD MEMBER DOES # 1 – 12 (collectively "Defendant NYPD Does")**, at all relevant times, were police officers employed by Defendant City through its police department, the NYPD. The true names and identities of these individual officers are not yet known, and they are referred to using the placeholder "NYPD Member Does # 1 – 12." Defendant Defendant NYPD Doe # 6 is believed to be a supervisor with the NYPD who was responsible for issuing orders to individual NYPD members under Defendant NYPD Doe # 6's supervision.

13.    At all times hereinafter mentioned, all individual Defendants were acting under color of state law and/or were acting in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of Defendant City of New York as agents and/or employees of Defendant City's NYPD.

14.    Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

15.    The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

16.    All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

17. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

18. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

## JURISDICTION AND VENUE

19. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

20. Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where Defendant City resides and where a majority of the actions complained of herein occurred.

21. Plaintiffs filed respective Notices of Claim within ninety (90) days of the incident giving rise to this Complaint.

22. Defendant City examined Plaintiff Shawn Rivera pursuant to GML § 50-H on February 26, 2024.

23. Defendant City examined Plaintiff Edwin Rivera pursuant to New York State General Municipal Law (GML) § 50-H on April 9, 2024.

24. The damages amount sought by Plaintiffs exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

25. More than thirty (30) days have elapsed since Plaintiffs' claims were submitted for payment to Defendant City and payment has been neglected or refused.

26. The instant Complaint is timely filed within one year and ninety (90) days of the incident giving rise to the injuries complained of herein.

**STATEMENT OF FACTS**

27. The events giving rise to Plaintiffs' injuries arose at approximately 12:30 PM on August 30, 2023, on 70th St. near the intersection of 70th Street and Queens Boulevard in Queens County, City and State of New York.

28. At this location, 70th St. is a two-lane street running North-South with one lane of traffic moving in each direction.

29. At this location, Queens Boulevard is an eight-lane street running East-West with four lanes of traffic, including service lanes, running in each direction.

30. At the time of this incident, Plaintiff Edwin Rivera resided at 46-02 72nd St., an apartment complex that occupies the Southwest corner of the above intersection. Plaintiff Shawn Rivera resided in Queens County. The Plaintiffs worked together operating a car detailing business.

31. Plaintiffs' vehicle was temporarily parked on the side of 70th St. while Plaintiff Edwin Rivera waited for Plaintiff Shawn Rivera to park his own vehicle and join Plaintiff Edwin Rivera.

32. At this approximate time and place, Defendant NYPD Police Officer CHRISTOPHER CAMPOS was recklessly operating his personal vehicle while off-duty and travelling northbound on 70th St.

33. When Plaintiff Shawn Rivera entered the front passenger side of the waiting vehicle, Plaintiff Edwin Rivera activated the left turn signal of his vehicle to merge into traffic, which was not moving due to a red light signal at the intersection of 70th St. and Queens Boulevard stopping traffic on 70th St.

34.     At this time, Defendant Campos was operating a vehicle travelling northbound on 70th St. and was off duty and wearing street clothes.

35.     Upon seeing Plaintiff activate the left turn signal and attempt to merge into traffic from a parked position, Defendant Campos suddenly accelerated toward stopped traffic to close the gap between himself and Plaintiffs.

36.     Defendant Campos veered his vehicle across the double yellow line into the southbound lane on 70th St., facing the wrong direction, and then swerved back to stop his vehicle diagonally on 70th St., using his vehicle to prevent the vehicle in which Plaintiffs were located from moving.

37.     Defendant Campos began wildly gesturing and threatening Plaintiffs Edwin Rivera and Shawn Rivera with violence.

38.     Defendant Campos opened his driver side door and appeared as though was exiting to confront Plaintiffs.

39.     Plaintiffs could not leave in their vehicle due to Defendant's location.

40.     Plaintiff Shawn Rivera exited the passenger side door to approach Defendant Campos.

41.     After threatening Plaintiffs again, Defendant veered back across the double yellow line and began driving northbound against traffic in the southbound lane on 70th St.

42.     Plaintiff then entered the intersection of Queens Boulevard and 70th St.

43.     After driving through the intersection, Defendant caused his vehicle to come to a sudden stop.

44.     Defendant then illegally reversed his vehicle toward Plaintiffs while travelling in the wrong direction onto 70th St. toward Plaintiffs Edwin Rivera and Shawn Rivera.

45.     Plaintiff Shawn Rivera, unarmed and on foot, struck the rear windshield of Defendant's rapidly reversing vehicle with his empty fist.

46.     While in his vehicle, Defendant turned toward the rear of his vehicle and raised his NYPD-issued firearm.

47.     Defendant then waved the firearm back and forth while grinning at Plaintiff Shawn Rivera.

48.     Still brandishing his firearm, Defendant exited his vehicle, pointed the firearm at Plaintiff Shawn Rivera, and ran toward Plaintiff Shawn Rivera.

49.     Plaintiffs were each unarmed.

50.     Defendant pursued Plaintiff Shawn Rivera, who was still on foot.

51.     While waving his firearm and chasing Plaintiff, having initiated a violent encounter and continuing to chase and assault Plaintiffs, Defendant yelled, in sum and substance, "I'm a cop, get on the ground."

52.     Defendant Campos reiterated to bystanders that he was a police officer to prevent bystanders from intervening in Defendant Campos' violent conduct on Plaintiffs' behalf.

53.     Defendant Campos pointed his gun at Plaintiff Shawn Rivera's head.

54.     Plaintiff Shawn Rivera held his arms in the air while Defendant Campos kept his finger on the trigger of the firearm and continued to train the firearm on Plaintiff's head and face.

55.     Plaintiff Shawn Rivera requested Defendant's badge number or any other identification and/or confirmation of Defendant Campos' employment.

56.     Plaintiff Edwin Rivera approached and demanded to know why Defendant Campos was threatening to shoot his brother.

57.     Plaintiff Edwin Rivera asked Defendant Campos for his badge, badge number, or any indication of his status as a police officer.

58.     Defendant Campos refused, or was unable, to provide any such information.

59.     Plaintiffs Edwin Rivera and Shawn Rivera repeatedly instructed bystanders to call 911 and to call the police.

60.     At least one bystander assured Plaintiffs, and Defendant Campos, that the police had been contacted.

61.     Defendant Campos ordered Plaintiff Edwin Rivera to get on the ground, and stated, in sum and substance, that he was going to shoot Plaintiff.

62.     Defendant Campos was in plainclothes and appeared disheveled.

63.     Defendant Campos appeared unsteady on his feet.

64.     Defendant Campos had not previously identified himself as a police officer while engaging in a threatening and violent manner with Plaintiffs.

65.     Defendant Campos' behavior was erratic, violent, and in violation of standard police practice.

66.     Plaintiffs Edwin and Shawn Rivera had no cause to credit Defendant's self-identification as a "police officer" or to lay prone on the ground at the direction of an armed stranger engaging in erratic and violent behavior.

67.     Plaintiffs had cause to doubt Defendant's self-identification as a member of the NYPD.

68.     Indeed, the New York City Police Department itself has repeatedly issued public warnings to residents regarding crimes committed by individuals impersonating police officers.

69. The issue is so widespread that the New York City Police Department has an official unit dedicated to investigating such crimes aptly called the Police Impersonation Unit.

70. Defendant City's official website, NYC.gov, instructs individuals to call 911 if they suspect an individual of impersonating a police officer.

71. Plaintiffs were aware of warnings issued by the NYPD regarding false personation of police officers.

72. Defendant Campos did not provide, and indeed did not possess, any information confirming his identity as a police officer.

73. Defendant Campos refused to provide a badge number to Plaintiff Edwin Rivera and/or Shawn Rivera, although Plaintiffs repeatedly requested the same to confirm Defendant's identity as a police officer.

74. Indeed, while pointing his gun at Plaintiffs, Defendant Campos appeared to mimic removing a badge from his pocket. Defendant Campos stated, in sum and substance, "I'll get my badge," then inserted his hand into his pocket before removing it to hold up an empty fist.

75. Defendant Campos was not in possession of a badge or any police-issued identification, nor was he in possession of a valid driver's license.

76. While threatening, pursuing, and assaulting Plaintiffs Edwin Rivera and Shawn Rivera, Defendant Campos appeared to make, or pretend to make, a phone call with one hand while waving his firearm wildly and pointing it at Plaintiffs with the other.

77. While holding his cell phone in one hand and his firearm in the other, Defendant Campos stated, in sum and substance, "send units, send units," but Plaintiffs did not hear Defendant identify himself as a police officer or provide a badge number to the individual(s) he appeared to have contacted.

78. During Defendants' assault, Plaintiffs Edwin Rivera and Shawn Rivera each repeatedly sought clarification and proof of Defendant Campos's identity, which Defendant repeatedly refused, or was unable, to provide.

79. Defendant Campos mishandled his weapon, holding it sideways, waving it wildly, and using the weapon itself to gesticulate with his finger on the trigger.

80. Plaintiffs remained in fear for their lives and for the lives of their family members within the residence.

81. Plaintiff Edwin Rivera and Shawn Rivera repeatedly implored to Defendant Campos to drop or holster his gun.

82. Plaintiffs Edwin Rivera and Shawn Rivera repeatedly informed Defendant Campos that Plaintiffs believed police were on their way, and repeatedly asked Defendant Campos to holster his gun and wait for police to arrive.

83. Plaintiffs repeatedly assured Defendant Campos that they would remain at the scene to await responding police.

84. Plaintiffs Edwin Rivera and Shawn Rivera repeatedly begged Defendant Campos not to shoot them.

85. Defendant Campos struck Plaintiff Shawn Rivera with his fist and his firearm.

86. Defendant Campos briefly holstered his weapon to continue his physical assault against Plaintiff Shawn Rivera, shoving Plaintiff's body into a fence and striking him repeatedly, causing Plaintiff pain, bruising, swelling, and lacerations to his face, chest, and body, and throwing Plaintiff into a nearby car and to the ground, causing bruising, pain, swelling, and lacerations to Plaintiff's hands and knees.

87.     When Plaintiff Edwin Rivera attempted to separate Defendant Campos from Plaintiff Shawn Rivera, Defendant Campos punched Plaintiff Edwin Rivera repeatedly in the left side of his face, causing Plaintiff pain, bruising, swelling, and lacerations.

88.     When Defendant Campos attempted to continue assaulting Plaintiffs, approximately fifteen (15) minutes after the start of Plaintiffs' ordeal at Defendant's hands, Plaintiffs held Defendant Campos against a nearby car by wrapping Plaintiffs' arms around Defendant's chest and arms while telling Defendant Campos to calm down and to wait for police to respond.

89.     Defendant Campos continued to threaten to shoot Plaintiffs.

90.     Plaintiffs did not attempt to injure Defendant Campos.

91.     At no time did Plaintiffs possess or brandish any weapon.

92.     Plaintiff Shawn Rivera stated, in sum and substance, "We just need to hold him until the cops get here. The cops are coming."

93.     Plaintiffs again implored Defendant Campos to calm down and await police response.

94.     Defendant Campos again reached for his firearm.

95.     Defendant Campos grabbed and fired his weapon at Plaintiff Edwin Rivera, shooting Plaintiff Rivera through the palm of his raised right hand.

96.     Plaintiff Edwin Rivera cried out in pain and began to bleed profusely.

97.     Defendant Campos shot himself while discharging his own weapon.

98.     Plaintiff Shawn Rivera exclaimed, in sum and substance, "You shot my brother! Why? Why did you shoot my brother? Just drop the gun!"

99.     Defendant Campos replied, in sum and substance, "I shot myself too, dickhead."

100.    Plaintiff Shawn Rivera then held Defendant Campos' wrist in an attempt to prevent Defendant Campos from firing again toward Plaintiff, his brother, and bystanders, continuing to implore Campos to drop the weapon and not continue to shoot.

101.    Defendant Campos refused and fired at least one additional shot.

102.    This shot was discharged so close to Plaintiff Shawn Rivera's head that they resulted in ongoing pain and tinnitus.

103.    Approximately fifteen (15) to twenty (20) minutes passed before NYPD Does # 1 – 5 arrived on the scene.

104.    Upon learning one of the men at the scene had identified himself as a police officer, NYPD Does # 1 – 5 attempted to determine which man, if any of them, was in fact a police officer.

105.    Like Plaintiffs, NYPD Does # 1 – 5 could not immediately verify Campos' identity as a police officer.

106.    NYPD Doe # 1 asked Plaintiff Shawn Rivera if he was a police officer, to which he responded, in sum and substance, "Not me — please just take the gun. Please."

107.    Defendant Campos' behavior remained erratic.

108.    NYPD Does # 1 – 5 disarmed Defendant Campos.

109.    Defendant Campos could not readily provide information to confirm his employment to Defendant NYPD Does # 1 – 5.

110.    Despite operating a vehicle, Defendant Campos carried no valid license or identification.

111.    Defendant Campos was not carrying a badge.

112.    Defendant NYPD Does # 1 – 5 spent approximately ten (10) minutes attempting to determine whether anyone at the scene was a police officer.

113.    After ultimately determining that Defendant Campos was a member of the NYPD, NYPD Does # 1 – 5 were directed by NYPD Member Doe # 6, a supervisor within the NYPD, to arrest Plaintiffs only.[1]

114.    NYPD Does # 2 applied overly tight handcuffs to Plaintiff Edwin Rivera's wrists, despite his gunshot wound.

115.    NYPD Does # 1 – 5 refused to loosen or adjust these handcuffs despite Plaintiff Edwin Rivera's requests and statements concerning severe pain and loss of sensation in his wrists and hands.

116.    NYPD Doe # 3 applied overly tight flexicuffs to Plaintiff Shawn Rivera's wrists.

117.    NYPD Does # 1 – 5 refused to loosen or adjust these handcuffs despite Plaintiff Shawn Rivera's requests and statements concerning severe pain and loss of sensation in his wrists and hands.

118.    Although Plaintiff Edwin Rivera was suffering from a gunshot wound and additional injuries, NYPD Does # 1 – 5 unreasonably delayed Plaintiff's urgently needed medical care for approximately a half an hour at the scene, and for additional time thereafter, thereby exacerbating these injuries and Plaintiff's pain and suffering.

119.    After significant delay, Plaintiff briefly received treatment at a hospital before being transported by NYPD Does # 6 – 10 to the NYPD's 108th Precinct in Queens County.

120.    Prior to transporting Plaintiff Edwin Rivera, NYPD Does # 6 – 10 then placed Plaintiff Edwin Rivera in overly tight flexicuffs despite his gunshot wound and despite repeatedly requesting that they were overly tight and causing him significant pain.

---

[1] At the time of filing, on November 29, 2024, the charges against Plaintiffs remain pending.

121.    Defendant Does # 6 – 10 refused to loosen the overly tight cuffs despite Plaintiff Edwin Rivera's requests.

122.    After approximately twelve (12) hours, NYPD Doe # 11 removed these cuffs using a hot object, which caused a burn to Plaintiff Edwin Rivera's wrist.

123.    Defendant City's policymakers NYPD Chief Jeffrey Maddrey and Chief of Patrol John Chell knowingly disseminated false information regarding these events during a public press conference on or about August 30, 2023, to influence finders of fact and/or members of a jury against Plaintiffs.

124.    NYPD Does # 11 and 12 further leaked information regarding Plaintiffs' dismissed and sealed arrests to members of the media and the public in violation of New York's sealing statute, CPL § 160.50, in an attempt to undermine Plaintiffs' credibility and falsely present the facts of these incidents to finders of fact.

125.    Defendant City, by its agents and/or employees with the NYPD, failed to meaningfully investigate the incident, levied false allegations to protect Defendant Campos due to his status as an NYPD officer, and deprived Claimant and Shawn Rivera of their rights.

126.    Plaintiffs remained in NYPD custody from the time of their detention on August 30, 2023, until their arraignment in Queens County on or about September 1, 2023.

127.    As a result of Defendants' conduct, Plaintiffs Edwin Rivera and Shawn Rivera each had bond set in the amount of $500,000 in Queens Supreme Court, Criminal Term, on or about September 1, 2023.

128.    Plaintiffs Edwin Rivera and Shawn Rivera were both wrongfully incarcerated in Defendant City's Department of Correction custody on Rikers Island from the time of their

arraignment on or about September 1, 2023, until on or about October 30, 2023, when family members posted bond for each Plaintiff.

129.     Between September 1, 2023, and October 30, 2023, Defendant City, by its agents and/or employees with the New York City Department of Correction, failed to provide Plaintiff Edwin Rivera with medical care, including failing to transport Plaintiff to medical appointments, resulting in an exacerbation of his serious and documented injury.

130.     At no time did any Defendants or any NYPD members intervene in the wrongful conduct of their colleagues.

### DAMAGES

131.     Defendants' conduct caused serious physical, emotional, and financial injuries to both Plaintiffs.

132.     Defendants' conduct caused serious injuries to Plaintiff Edwin Rivera, including a gunshot wound to his dominant right hand, severe pain and suffering, muscle and tissue damage, scarring, exacerbation of injuries, reduced mobility, fear, anxiety, post-traumatic stress, emotional anguish, and additional damages.

133.     Defendants placed Plaintiffs Edwin Rivera and Shawn Rivera in fear for their lives and the lives of Plaintiff Edwin Rivera's partner and infant child.

134.     As described above, Plaintiff Edwin Rivera sustained injuries to his physical and emotional well-being, including a gunshot wound, pain and suffering, scarring, muscle and tissue damage, reduced ability to participate in regular activities, reduced enjoyment of daily life, and reduced range of motion.

135.     Plaintiffs Edwin Rivera and Shawn Rivera their small business, employment, and income as a result of this incident.

136.     Defendants forced Plaintiff Rivera to be separated from his wife and infant son for this entire period and to lose the income needed to support his family.

137.     As described above, Plaintiff Shawn Rivera suffered bruising, swelling, and lacerations to his wrists, pain and suffering, exacerbation of injuries, tinnitus, hearing loss, reduced range of motion in his wrists, and additional damages.

138.     The conduct of Defendants caused Plaintiffs serious emotional injury including distress, anxiety, fear of death, difficulty sleeping, post-traumatic stress, mental anguish, in addition to other emotional trauma/damage.

139.     The effects of Plaintiffs' injuries are ongoing.

140.     Plaintiffs continue to suffer from the injuries caused by Defendants, and the full extent of their injuries is not yet known.

141.     Plaintiffs allege the following damages, among others: compensatory damages for past and/or future emotional and/or physical pain and suffering; compensatory damages for violation(s) of Plaintiff's constitutional rights; compensatory damages for loss of past and/or future income; compensatory damages for past and/or future medical expenses; compensatory damages for other economic damages; diverse general and special damages; and punitive damages.

## FIRST CLAIM FOR RELIEF

### Excessive Force
*Against Defendant Campos and Defendant NYPD Does # 1 – 5 Pursuant to <u>42 U.S.C. § 1983</u>*

142.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

143.     Defendants' use of force against Plaintiffs was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

144.     These instances of excessive force include, *inter alia*, Defendant Campos' multiple instances of assault and battery against both Plaintiffs, Defendant Campos' use of deadly force in shooting Plaintiff Edwin Rivera, and Defendant NYPD Does' application of overly tight handcuffs to both Plaintiffs, causing additional injuries to Plaintiffs' wrists and hands.

145.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

146.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SECOND CLAIM FOR RELIEF

**Failure to Intervene**

***Against Defendants NYPD Does # 1 – 12 Pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution***

147.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

148.     At no time did any Defendant NYPD members, or any other NYPD members, intervene in the unlawful conduct of their colleagues, including the multiple instances of excessive force against Plaintiffs described above.

149.     Defendant NYPD Members possessed a special duty to Plaintiffs and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiffs.

150.     Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiffs.

151.     At no time did any Defendants intervene in the deficient conduct of their colleagues or otherwise fulfil their specialized duty to protect Plaintiffs.

152.     Defendant City and its employees and/or agents breached the existing duty to protect Plaintiffs, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiffs.

153.     The above Defendants, acting under color of law, failed to protect Plaintiffs, and such inaction enabled and/or facilitated and/or exacerbated the injuries suffered by Plaintiffs.

**THIRD CLAIM FOR RELIEF**

**Negligence**
***Against All Defendants Pursuant to New York State Law***

154.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

155.     Defendants possessed a special duty to Plaintiffs and breached that duty through their respective and collective conduct.

156.     As a result of the Defendants' conduct, Plaintiffs sustained the injuries complained of herein.

157.     Said negligence stated herein, consisted, *inter alia*, of negligence in hiring, training, retention of police officers involved in this incident; supervision; negligence in failing to adhere to the existing police department Police Patrol Guidelines protocol as to the use of deadly force causing serious injuries both physical and emotional; deprivation of Plaintiffs' civil rights, privilege and immunities secured under the Constitution of the United States of America and State of New York; and negligence in failing to use care in performance of police duties for which a reasonably prudent and careful police officer would have used in similar circumstances.

158. Due to the aforementioned negligence by Defendants, Plaintiffs were caused to suffer severe physical injuries, pain and suffering, and emotional and psychological distress and anguish.

159. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

**Denial and/or Delay of Medical Care**
**New York State Civil Rights Law, Ch. 6, art. 3 § 28**

160. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

161. At the time of the incident giving rise to the instant Complaint, Plaintiff Edwin Rivera in the custody of Defendants, who are each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the New York State Civil Rights Law. As such, Defendants had a duty to provide assistance and treatment for Plaintiff's medical needs.

162. During Plaintiff Edwin Rivera's incarceration between Septebmer 1, 2023, and October 30, 2023, Plaintiff was detained in Defendant City's custody through its agents and/or employees with Defendant City's Department of Correction, each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the New York State Civil Rights Law.

163. Defendants abdicated their duties under this statute and failed to provide medical care to Plaintiff, both at the time of Plaintiff's arrest and thereafter in Defendant City's custody through the NYPD and DOC.

164. Such denial and/or delay was unreasonable and caused delay in Plaintiff's treatment for a serious injury.

165.    This failure resulted in serious injury and/or the exacerbation of Plaintiff's injuries, including his documented and diagnosed gunshot wound, for which Defendants are liable.

## FIFTH CLAIM FOR RELIEF

**Wrongful Search and Seizure and/or Excessive Force**
***Against All Defendants Pursuant to New York City Admin. Code,***
***Ch. 8, Title 8, § 8-801*, et seq.**

166.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

167.    As described above, the Defendants violated Plaintiffs' right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

168.    Pursuant to NYC Admin. Code Title 8, Chapter 8, §§ 8-801 through 8-809 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

169.    The NYPD Defendants, including Defendant Campuzano and Defendant NYPD Does # 1-5, as employees of the Defendant City's police department, are "covered individuals" as defined in § 8-801 of this Chapter.

170.    Pursuant to § 8-802, *et seq.*, NYPD Defendants and their employer, including Defendant City, are liable to Plaintiffs for the conduct described herein.

171.    Pursuant to § 8-803, Plaintiffs' claims under common law or pursuant to any other law or rule are not limited or abrogated by his invocation of this statute.

172.    The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

173.     Pursuant to § 8-804, Defendants may not invoke the defense of qualified immunity to avoid liability for this cause of action.

174.     Pursuant to § 8-806, Plaintiffs are entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

## SIXTH CLAIM FOR RELIEF

### Assault and Battery
### *Against Defendant Campos Pursuant to New York State Law*

175.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

176.     Defendant Campos committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiffs in fear of imminent harmful or offensive contact.

177.     The force utilized by Defendant was unreasonable and intentional.

178.     Defendant committed battery within the meaning of New York common law against Plaintiffs by intentionally physically contacting Plaintiff without Plaintiffs' consent.

179.     Defendant did thereby inflict assault and battery upon the Plaintiffs.

180.     Plaintiffs were seriously injured as a result of this conduct.

181.     The unlawful conduct of the Defendant was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against Defendant.

## SEVENTH CLAIM FOR RELIEF

### Negligent Training, Hiring, and Retention
### *Against Defendant City Pursuant to New York State Law*

182.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

183.     Upon information and belief, Defendant City, by its agents and/or employees, supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

184.     At all times relevant herein, NYPD Defendants were employed by, and acting in the scope of their employment with, Defendant City.

185.     Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiffs' injuries,

186.     Defendant City negligently entrusted Defendants, including Defendant Campos, with the power and authority to cause Plaintiffs' harms, including with his service weapon while off duty.

## EIGHTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress
### *Against All Defendants Pursuant to New York State Law*

187.     Defendants owed Plaintiffs a duty of care and breached this duty of care through the conduct described herein, directly causing the emotional harms, including post-traumatic stress, insomnia, depression, and ongoing anxiety and fear to both Plaintiffs.

## NINTH CLAIM FOR RELIEF

### Violations of the New York State Constitution
### *Against All Defendants*

188.     Defendants, acting under color of law, violated Plaintiffs' rights pursuant to Article I §§ 11 (equal protection) and 12 (security against unreasonable searches and seizures) of the New York State Constitution.

189.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 11 and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

**WHEREFOR**E, Plaintiffs demand judgment against the individual Defendants and the City of New York as follows:

i.      Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages in an amount to be determined at trial against Defendant City;

ii.     Injunctive relief and policy change;

iii.    All relief available to Plaintiffs pursuant to New York State Civil Rights law;

iv.     All relief available to Plaintiffs pursuant to NY Admin. Code, including Ch. 8, Title 8, § 8-801, *et. seq*;

v.      Statutory attorney's fees, disbursements, punitive damages, actual damages, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988; and

vi.     Such other relief as the Court deems just and proper.

**Dated:**    Brooklyn, New York
              November 29, 2024

                         KAISHIAN & MORTAZAVI LLC
                         **Attorneys for Plaintifs**

                         By: _Maryanne Kaishian_____

                         Maryanne K. Kaishian, Esq.
                         55 Washington Street, Ste. 508
                         Brooklyn, New York 11201
                         T: (347) 662-2421
                         E: mk@kaishianlaw.com

## ATTORNEY VERIFICATION

I, MARYANNE K. KAISHIAN, an attorney duly admitted to practice duly admitted to practice before the United States District Court for the Eastern District of New York, affirms the following to be true under the penalties of perjury:

1. I am the attorney of record for the Plaintiffs.

2. I submit the instant verification on behalf of Plaintiff EDWIN RIVERA.

3. I have read the annexed Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.

4. My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, and other pertinent information contained in my files.

5. I make this verification because Plaintiff EDWIN RIVERA does not currently reside in the County (Kings) where I maintain my office.

**DATED:** Brooklyn, New York
November 29, 2024

By: _____
Maryanne K. Kaishian, Esq.
**Kaishian & Mortazavi LLC**

## PLAINTIFF VERIFICATION

**SHAWN RIVERA**, the Plaintiff in the above action, affirms the following under penalties of perjury:

1. I am the Plaintiff in the attached matter, *Rivera, et al. v. City of New York, et al.*

2. I am over 18 years old and I am a resident of Kings County, City and State of New York.

3. I have read the attached Complaint and relevant facts, dated <u>November 29, 2024,</u> and the same is true and to my own knowledge except as to matters therein alleged to be on information and belief, and as to those matters, I believe them to be true.

**Dated:** Brooklyn, New York
29 November, 2024

_____

**SHAWN RIVERA**

---

STATE OF NEW YORK          )

                                                 SS.

COUNTY OF KINGS                         )

On the __29th__ day of __November__ in the year __2024__, before me, the undersigned notary public, personally appeared _____SHAWN RIVERA__, known to me or proved to me on the basis of satisfactory evidence to be the individual whose names are ascribed to the within instrument and acknowledged to me that this individual executed the same in this individual's capacity or capacities, and that by placing this signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notarized online using audio-video communication

Maryanne K Kaishian
Online Notary Public
State of New York
Kings County
Commission #: 02KA0015799
Commission Expires: 11/07/2027

_____

Notary Public